# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

BRANDI L. MOORE,

      Plaintiff,

                                      **Civil Action 2:18-cv-00511**
                                      **Judge George C. Smith**
    v.                              **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Brandi L. Moore ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 9). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff applied for disability benefits and supplemental security income on May 19, 2014.[1] (R. at 196–209.) Plaintiff's claim was denied initially and upon reconsideration. (R. at

---

[1] The Administrative Law Judge's decision indicates that Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for

127–32, 137–48.)  Upon request, a hearing was held on November 30, 2016, during which

Plaintiff, represented by counsel, appeared and testified.  (R. at 37–72, 149–50.)  A vocational

expert also appeared and testified at the hearing.  (R. at 62–71.)  On March 22, 2017,

Administrative Law Judge Thomas L. Wang ("the ALJ") issued a decision finding that Plaintiff

was not disabled at any time after June 12, 2008, the alleged onset date.  (R. at 12–29.)  On

March 26, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's

decision as the Commissioner's final decision.  (R. at 1–6.)  Plaintiff then timely commenced the

instant action.  (ECF No. 6.)

## II.  HEARING TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff testified that she was involved in a car accident on June 12, 2008 which affected

her ability to work.  (R. at 40–43.)  Plaintiff also testified that she was married and had two

daughters, ages ten and five.  (R. at 45.)  Plaintiff stated that the cane she was using at the

administrative hearing was prescribed to her "about six months after the [car] accident."  (*Id.*)

Before using the cane, she testified she was using a walker and wheelchair during those six

months.  (*Id.*)

Plaintiff testified that she worked in 2010 for a college doing "phone work and

telemarketing."  (R. at 47.)  She further testified that the job "let her go" after a couple of

months.  (*Id.*)  When asked why she is unable to work, Plaintiff testified that in 2010 and 2011

---

supplemental security income on April 3, 2014.  (R. at 15.)  However, the application forms
indicate that Plaintiff applied on May 19, 2014.  (R. at 196–209.)

when she was pregnant she "gained over 200 pounds in eight months." (R. at 50.) She also testified that she experienced convulsions at that time and emergency services were called. (R. at 50–51.) She further testified that she continues to have problems with standing and walking. (R. at 51–52.) Plaintiff also testified that getting dressed takes her "about three-and-a-half hours." (R. at 52.)

Plaintiff testified that she has difficulty with her memory sometimes such as not being able to think of certain words. (R. at 56.) Regarding her ability to maintain attention and concentration, she testified she loses her concentration a lot. (R. at 56–57.) She testified that she gets two-and-a-half hours to four hours of sleep a night and naps four days a week. (R. at 58–59.) She further testified that she cannot walk the length of a city block without taking a break. (R. at 60.)

**B. Vocational Expert Testimony**

Connie O'Brien testified as the vocational expert ("VE") at the November 2016 hearing. (R. at 62–71.) The VE testified that Plaintiff's past work included office manager and customer representative. (R. at 64.) The ALJ asked the VE to assume a hypothetical individual with the Plaintiff's age, education, and past jobs who can lift and/or carry twenty pounds occasionally; can lift and/or carry ten pounds frequently; can stand and/or walk four hours out of an eight hour work day and sit six hours out of an eight hour work day; with pushing and pulling limited as per exertional weight limits; who can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch, or crawl; can do goal-based production work measured by end result, not pace work; with work limited to simple, routine,

3

and repetitive tasks; who is off task five percent of the work day; who must work in a low stress job defined as only having occasional decisionmaking required and only occasional changes in the work setting; with only occasional interaction with the public, coworkers, and supervisors. (R. at 65.)  Assuming those limitations, the VE testified that the hypothetical individual could not perform any of Plaintiff's past work, but could work as an office helper, photocopy machine operator, and route clerk.  (R. at 65–66.)

The ALJ asked the VE to take the first hypothetical but to assume the sedentary level and that a cane would be required for ambulation.  (R. at 68.)  Assuming those limitations, the VE testified that the hypothetical individual could not perform any of Plaintiff's past work, but could work as an addresser, inspector, and document specialist.  (*Id.*)  The ALJ asked the VE to take the second hypothetical but add the limitation that frequent supervision would be required for both mental and physical reasons and that the individual would have memory problems or would need additional help perhaps in constant reminders to stay on task and to be on time.  (R. at 69.)  Assuming those limitations, the VE testified that the hypothetical individual would be precluded from competitive work.  (*Id.*)  The VE further testified that if the additional limitation of the hypothetical individual being consistently late to work three times a month were added to any of the previous hypotheticals this would preclude the hypothetical individual from work.  (*Id.*)  The VE also testified that if the additional limitation of the hypothetical individual being off task ten percent of the day were added to any of the previous hypotheticals this would preclude the hypothetical individual from work.  (*Id.*)

### III.  MEDICAL RECORDS

**A.  William Michael Johnson, M.D.**

Dr. Johnson wrote a letter regarding Plaintiff on May 5, 2014.  (R. at 604.)  Dr. Johnson indicated that Plaintiff had been seen in his office since September 2008 for management of her chronic medical conditions and pain control.  (*Id.*)  Dr. Johnson also wrote:

> [Plaintiff] has a past medical history complicated by a [motor vehicle accident] in June 2008.  She suffered extensive injuries requiring a prolonged hospital stay at Mount Carmel West.  The Orthopedic Trauma physicians performed a right acetabulum reconstruction with placement of hardware.  This has been her primary source of longterm [sic] disability and pain.  She has been treated with pain medications and physical rehabilitation.  Most recent work has been with water aerobics.  [Plaintiff] is typically dependent of a cane for ambulation outside her residence.  She has not worked due to this disability and has been a stay [at] home mother.

> [Plaintiff] had her second pregnancy in July 2011 complicated by blood pressure and blood sugar problems.  She had significant weight gain that has been difficult to manage due to her physical limitations.  The weight gain has added stress to her lower back and knees.

> [Plaintiff] has been a reliable and motivated patient but has physical limitations secondary to her hip pathology.

(*Id.*)  On March 23, 2015, Dr. Johnson wrote an almost identical letter adding that Plaintiff has attempted to return to work but was unable secondary to her physical limitations and that she has plans to investigate surgical weight loss.  (R. at 614.)

On November 14, 2016, Dr. Johnson wrote a substantially similar letter to his first two, writing:

> [Plaintiff] has been seen in our practice since September 2008.  [She] is seen regularly for management of her chronic medical conditions and pain control.

[Plaintiff] has a past history of a [motor vehicle accident] in June 2008. She suffered extensive injuries requiring a prolonged hospital sta[y] at Mt. Carmel [W]est Medical Center. The Orthopedic Trauma service performed a right acetabulum reconstructions with placement of hardware to stabilize the socket wall. This has been her primary source of long term pain and disability. She has recently been re[-]evaluated by the Orthopedic Trauma service for hip injections due to premature arthritis of both hips. That being said, she has also experienced extensive weight gain, anxiety, depression and sleep deprivation due to limitations in ambulating, whether at home or at work. For this reason, patient is a stay at home mother.

[Plaintiff] had her second pregnancy in 2011 complicated by more weight gain and a new diagnosis of blood sugar "issues". Patient has been struggling with her weight gain for awhile now and is experiencing unbearable symptoms due to her on going [sic] and worsening symptoms.

[Plaintiff] has been a reliable and motivated patient, however, it is within my opinion, that patient is unable to hold employment indefinitely because of her many physical limitations.

(R. at 766.)

Throughout Plaintiff's visits with Dr. Johnson, the doctor indicated the following regarding Plaintiff: mild left hip degenerative change with spurring at the femoral head-neck junction, no acute osseous abnormality (R. at 431); complaints of left hip, knee, and back pain (R. at 435, 443–44, 487, 490, 494); numbness of the feet (R. at 435); complaints of anxiety (R. at 436, 444, 487, 505); use of a cane for ambulation (R. at 436, 444, 506, 509), as well as attending appointments and ambulating without the cane (R. at 439, 769, 776, 783); reports of ambulation tolerance improved with water aerobics (R. at 439, 443, 486); ability to do housework with the use of pain medications (R. at 439); reports of improvement in mood and pain due to increased physical activity (R. at 475); weight issues (R. at 486); medication changes (R. at 486); complaints of fatigue (R. at 490); substance dependence issues (R. at 540, 550, 582–83);

6

discontinuing water aerobics (R. at 809, 862); normal reflexes (R. at 783, 810); normal mood and affect (R. at 810, 816, 848); pelvic pain (R. at 815); and decreased range of motion of bilateral hips (R. at 848).

### B. Karen Bretz, Ph.D.

Dr. Karen Bretz is a State agency psychological consultant who completed an assessment of Plaintiff on July 21, 2014. (R. at 605–12.) Throughout Dr. Bretz's assessment the car accident is noted as occurring in 2006.[2] (*See id.*) During the assessment, Plaintiff reported that while in school she did not repeat any grades and did not receive special education services. (R. at 606.) Plaintiff reported the following current depressive symptoms: problems sleeping, weight gain, concentration problems, irritability, memory problems, feelings of hopelessness, sadness, crying easily, and excessive remorse. (R. at 607.)

Plaintiff reported that on a typical day she gets up at 8:00 AM, "tends to her morning hygiene, takes her medication, changes her daughter's diaper, then helps her older daughter get breakfast, and tries to manage her pain by sitting and standing and changing positions." (*Id.*) She also reported that she "spends most of her day watching television and playing with her children[,]" that she does no household chores, that her husband is responsible for paying the bills, and that she goes to bed at various times. (*Id.*)

Dr. Bretz made the following observations about Plaintiff:

[Plaintiff] is a 31-yerar-old Caucasian female whose appearance was consistent with her age. She drove herself to the appointment and arrived on time. She spent an excessive amount of time completing the paperwork, writing lengthy responses

---

[2] Plaintiff testified that the car accident occurred on June 12, 2008, and alleges this date is her disability onset date. (R. at 40–32, 196–209.)

to free response questions with irrelevant information, so much so that she was unable to complete the paperwork and was 30 minutes late for the interview. During the exam, she often had trouble limiting her answers to the question being asked, and had to be interrupted and redirected several times. [Plaintiff] denied any problems with her vision or hearing.

. . .

[Plaintiff's] speech was tangential with normal volume and pace. She had a difficult time limiting her answers to the questions being asked, even though instructed several times to do so. She displayed no articulation problems. Her thought processes were clear and without loose associations or obvious delusions. [Plaintiff] reported she has no history of auditory or visual hallucinations.

. . .

[Plaintiff] appeared to participate fully with the interview process and seemed easily engaged in appropriate spontaneous conversation. She displayed good effort for the Clinical Status Exam, and her effort seemed to reflect her abilities.

. . .

Her ability to understand, remember and carry out instruction appeared to be somewhat impaired during the interview, as she had difficulty limiting her answers to the question being asked, and had difficulty distinguishing between relevant and irrelevant information.

Her ability to sustain concentration and persistence is somewhat impaired. She had difficulty holding auditory information in her short-term memory during the exam.

Her ability to interact with others may be somewhat impaired by her anxiety, as she reports that she has fears of being judged. She was very polite and pleasant during the exam, albeit tearful and tangential in her answers.

Her ability to adapt to changes in the work environment is somewhat impaired by her depression, as she appears to have limited stress management resources.

(R. at 608–09.) Dr. Bretz diagnosed Plaintiff with Major Depressive Disorder, moderate, with anxious distress. (R. at 609.)

## IV.  ADMINISTRATIVE DECISION

On March 22, 2017, the ALJ issued his decision.  (R. at 12–29.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2008, the alleged onset date.  (R. at 17.)  The ALJ found that Plaintiff has the following severe impairments:  osteoarthritis of both hips status post vehicle accident with right hip dislocation fracture, obesity, chronic pain syndrome with history of polysubstance dependence, and major depressive disorder with anxious stress.  (*Id.*)  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except pushing and pulling are limited as per exertional weight limits; cane required for ambulation; occasionally climbing [of] ramps and stairs but no climbing of ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; capable of goal-based production/work measured by end result, not pace work; work limited to simple routine repetitive tasks; work allowed off task five percent of the workday; work in a low stress job setting defined as only decision making required and only occasional changes in the work setting; only occasional interaction with supervisors, co-workers, or the general public.

(R. at 19–20.)

Relying on testimony from the VE, the ALJ concluded that Plaintiff is unable to perform any of her past relevant work. (R. at 27.) The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) He therefore concluded that Plaintiff was not disabled under the Social Security Act from June 12, 2008, through the date of the administrative decision. (R. at 28.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth two assignments of error. First, Plaintiff asserts that the ALJ failed to provide good reasons for rejecting the findings of Dr. Johnson. (ECF No. 14, at pg. 6–10.) Second, Plaintiff asserts that the mental RFC is not supported by substantial evidence. (*Id.* at 11–13.) The Undersigned addresses each in turn.

## A. Treating Physician Rule - Good Reasons Requirement

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550

(6th Cir. 2010) (internal quotation omitted). The Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 f.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Dr. Johnson was Plaintiff's treating physician. Plaintiff, however, insists that the ALJ failed to provide good reasons for assigning his opinion only little weight. The Undersigned disagrees.

The ALJ thoroughly discussed Dr. Johnson's opinions and concluded that they were generally inconsistent with objective findings, his treatment notes, imaging reports, and other providers findings. (R. at 21–25.) Substantial evidence supports this conclusion. For instance, Plaintiff demonstrated "normal findings" at a number of visits. (*See, e.g.*, R. at 21 ("She had normal findings with the exception of her weight at 203 pounds and decreased range of motion of her right hip status post June of 2008 accident and surgical repair."); 21 ("Her lumbar spine x-ray on December 30, 2008 was essentially normal."); 21 ("Findings on exam including decreased range of motion of her right hip due to pain and use of a cane, but otherwise normal findings including strength."); 22 ("On exam, she had no focal deficits, intact cranial nerves with normal sensation, normal reflexes, normal coordination and normal muscle strength and tone."); 22 ("She had decreased range of motion in her left hip, with otherwise normal findings."); 22 ("Her left and right knee x-rays indicated normal appearing knees and her lumbar spine x-ray was unremarkable.").)

The ALJ also noted the indications of Plaintiff's substance abuse issues. (*See, e.g.*, R. at 21 ("Throughout these notes are [Dr. Johnson's] concerns about the possibility of opiate dependency, with the claimant on Vicodin even prior to her car accident, and being unable to reduce her usage."); 21 ("Dr. Johnson [included] a diagnosis of continued Sedative hypnotic/anxiolytic dependence.").) Additionally, the ALJ indicated that Plaintiff had reported improvements in her condition with water aerobics. (*See, e.g.*, R. at 22 ("She reported overall doing well and performing water aerobics and seated aerobics at the YMCA."); 22 ("On May 14, 2013, the claimant reported doing water aerobics at the YMCA three days a week and feeling her

*mood and pain were better due to increased physical activity*.") (emphasis in original); 22 ("She presented without her cane on January 28, 2014, reporting *increased ambulation tolerance with water aerobics classes* with workouts increasing in intensity.") (emphasis in original).)  The ALJ properly considered these inconsistencies, including activities of daily living, as good reasons to discount Dr. Johnson's opinion.  *See Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 1373869, at *3 (S.D. Ohio March 19, 2018) (finding inconsistency, including activities of daily living, constitutes good reason to discredit treating physician's opinion).

The ALJ assigned "little weight" to the opinions in the letters from Dr. Johnson.  (R. at 23–24.)  First, the ALJ properly afforded no weight to Dr. Johnson's opinion that Plaintiff could not work because the determination of disability is reserved to the Commissioner.  20 C.F.R. § 404.1527(d).  Furthermore, the ALJ noted that Dr. Johnson's treatment notes "reflect generally normal findings as to most systems with the exception of the range of motion and cane use and occasionally anxiety, some of it in conjunction with reduction of her pain medications and concerns over her polysubstance (medication) dependence issues, which was also noted by other treating doctors."  (*Id.*)  The ALJ additionally indicated that Dr. Johnson had noted Plaintiff's improvement with the YMCA water aerobics program.  (*Id.*)  The ALJ did note that he "considered [Dr. Johnson's] opinion in so far as it supports [Plaintiff's] sedentary exertional level [RFC], with particular consideration of the objective findings in [Dr. Johnson's] treatment notes and suggestion that [Plaintiff's] obesity was a complicating factor.  Further limitation is not supported by the objective findings in [Dr. Johnson's] notes, the imaging results, or findings by other providers."  (*Id.*)

15

"Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) (citations omitted). Here, Dr. Johnson's opinions within his three almost identical letters contradicted his own treatment notes, medical evidence from other providers, and Plaintiff's own self-reports. The ALJ properly afforded only little weight to his opinions. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record[.]"); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (finding the "lack of internal consistency" in a treating source's opinion constituted "good reason"). It is therefore **RECOMMENDED** that Plaintiff's contention of error based on the ALJ's evaluation of Plaintiff's treating physician's opinions be **OVERRULED**.

## B. Mental RFC

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v.*

*Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08-cv-00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in

functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he set forth

in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations).    In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in the
> case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial

evidence.  In his efforts to challenge the ALJ's mental RFC determination, Plaintiff asserts that

the mental RFC "is materially inconsistent with Dr. Bretz's functional limitations."  (ECF No.

14, at pg. 11.)  Dr. Bretz is a State agency psychological consultant.  (R. at 605–12.)  "[T]he

opinions of non-examining state agency medical consultants have some value and can, under

some circumstances, be given significant weight."  *Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp.

2d 813, 824.  (S.D. Ohio Sept. 19, 2011).  Indeed, the Commissioner views such medical sources

"as highly qualified physicians and psychologists who are experts in the evaluation of the

medical issues in disability under the [Social Security] Act."  *Id.*; § 416.927(d), (f).

"Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F. Supp. 2d at 824. Even though an ALJ "must consider [the] findings of State agency medical and psychological consultants, [he or she] is not bound by any findings made by State agency or psychological consultants." *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir. 2002) (internal quotations and citation omitted).

Dr. Bretz opined that Plaintiff spent an excessive amount of time completing the paperwork, had trouble limiting her answers to the questions being asked, that her ability to understand, remember, and carry out instruction appeared to be somewhat impaired, that she had difficulty distinguishing between relevant and irrelevant information, that her ability to sustain concentration and persistence was somewhat impaired, that her ability to interact with others may be somewhat impaired by her anxiety, and that her ability to adapt to changes in the work environment is somewhat impaired by her depression. (R. at 608–09.) Dr. Bretz also noted that Plaintiff's appearance was consistent with her age, she drove herself to the appointment, her speech was tangential with normal volume and pace, her thought processes were clear and without loose associations or obvious delusions, she seemed easily engaged in appropriate spontaneous conversation, and she was very polite and pleasant. (*Id.*) Dr. Bretz diagnosed Plaintiff with Major Depressive Disorder, moderate, with anxious stress. (R. at 609.)

The ALJ discussed Dr. Bretz's opinions as follows:

[Plaintiff] had a psychological evaluation on July 21, 2014 [with Dr. Bretz], reporting that she cannot work as she cannot walk or get much sleep and everything is bad. She reported being married and living with her husband of 3.5 years and children ages 3 and 7. She reported having attended Columbus State for four years

but not graduating, with last enrollment in 2003. She reported that her medications relieve many of her symptoms. She reported benefit from a few months of counseling following her 2006[4] car accident, until she lost insurance. She reported enjoying socializing with family, but having lost contact with friends. She reported spending her day watching television and playing with her children. She reported managing her own personal hygiene, changing her daughter's diapers, and helping her older daughter get breakfast. She reported doing no household chores with her husband tending to the cleaning and household management. However, her treatment records indicate that she was able to perform some household chores with treatment as discussed above.

[Plaintiff] was noted to have spent an excessive amount of time completing her paperwork by writing lengthy responses and was unable to complete it such that she was thirty minutes late to her interview. She had trouble limiting her answers to the questions asked and had to be interrupted and redirected several times. She was alert, oriented, had clear thought processes, recalled 3 of 3 words after a 5 minute delay, slowly did serial-7s, solved math problems, spelled world forward and backward, had adequate long term memory, and solved several simple verbal abstractions without difficulty. She was noted to participate fully, seemed [to] easily engage in appropriate spontaneous conversation, and displayed good effort on the clinical status exam. She was diagnosed with major depressive disorder moderate with anxious distress. She had somewhat impaired ability to understand, remember and carry out instructions with her difficulty limiting her answers to the question asked and distinguishing between relevant and irrelevant information. She had some difficulty holding auditory information in her short-term memory during the evaluation. Her ability to interact with others was found somewhat impaired by her anxiety with reports of fears of being judged. However, she was very polite and pleasant, albeit tearful and tangential in answers. Her ability to adapt to changes in the work setting was deemed somewhat impaired by her depression with limited stress management resources (Exhibit 8F). Significant weight is given to the opinion of the psychological examiner, which is supported by the evaluation itself and by other evidence in the record, which has been covered previously. Notably, [Plaintiff] has reported benefit[s] from her psychotropic medications and the limited counseling that immediately followed her accident. Notes reflect these reports as well as normal mental status exam findings at many examinations. Some medication adjustments were required with improved symptomology following these adjustments. [Plaintiff] did not pursue any other mental health treatment and thus treated with medications prescribed by a primary care doctor only after her brief and successful counseling.

---

[4] Again, Plaintiff's car accident was on June 12, 2008, the alleged disability onset date. (R. at 196–209.)

(R. at 25–26.)

Plaintiff asserts that the "ALJ gave no indication that Dr. Bretz's opinions were inconsistent with the record or not well-supported." (ECF No. 14, at pg. 12.) This assertion is not entirely correct, as the ALJ pointed out that while Plaintiff had reported doing no household chores, her treatment records indicated that she was able to perform some household chores with treatment. (R. at 26.) Nevertheless, Plaintiff asserts that the ALJ's mental RFC determination "appears to be materially inconsistent with Dr. Bretz's opinions." (ECF No. 14, at pg. 12.) The fact that the ALJ did not incorporate all of Dr. Bretz's restrictions, despite attributing significant weight to her opinion, is not legal error in and of itself. *See White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (noting that the ALJ's decision not to incorporate all of the State agency examining physician's restrictions, despite attributing significant weight to his opinion, was "not legal error in and of itself"). "While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). Indeed, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x at 198.)

Here, the ALJ's mental RFC determination accounted for mental and social limitations, finding that Plaintiff could only engage in simple, routine, and repetitive tasks, would need to be off task five percent of the workday, would need a low stress job with only occasional changes in

20

the work setting, and could have only occasional interaction with supervisors, co-workers, or the general public.  (R. at 19–20.)  Medical evidence substantially supports the ALJ's RFC without the additional limitations that Plaintiff asserts were part of Dr. Bretz's opinion.  For example, upon numerous mental examinations Plaintiff was noted to be alert and cooperative, have a normal mood and affect, have normal attention span and concentration, have an intact memory for recent and remote events, and denied memory loss or mental disturbance.  (*See, e.g.*, R. at 437, 441, 444, 476, 481, 487, 495, 508, 540, 543, 547, 579, 583, 592, 769.)  Here, the Undersigned finds that substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations that he found credible.  *Coldiron*, 391 F. App'x at 439 ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted).  It is therefore **RECOMMENDED** that Plaintiff's contention of error based on his mental RFC determination be **OVERRULED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: August 1, 2019          */s/ Elizabeth A. Preston Deavers*
                              **ELIZABETH A. PRESTON DEAVERS**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**